UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**
**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Martha B. Chovanes, Esq.
Christina M. Sanfelippo, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
mchovanes@foxrothschild.com
csanfelippo@foxrothschild.com
*Proposed Counsel to the Debtor and*
*Debtor in Possession*

**Order Filed on September 23, 2019 by Clerk U.S. Bankruptcy Court District of New Jersey**

In re:
KLINE CONSTRUCTION CO., INC.,
                    Debtor.

Chapter 11
Case No.  19-25757 (JNP)
Hearing Date: September 23, 2019

**THIRD INTERIM ORDER APPROVING DIP PURCHASE AND
SALE AGREEMENT AND AUTHORIZING DEBTOR TO OBTAIN FINANCING
FROM PRESTIGE CAPITAL CORPORATION AND TO USE CASH COLLATERAL**

The relief set forth on the following pages, numbered 2 through 21, is hereby **ORDERED**.

**DATED: September 23, 2019**

Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Court

Active\102400304.v2-9/20/19

Page 2 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order: THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

This matter having come before the court on the motion of Kline Construction Co., Inc.

(hereafter "Debtor"), by and through Fox Rothschild LLP, proposed counsel for Debtor, for

authorization to obtain interim post-petition financing and use cash collateral on an interim basis,

and for related relief pursuant to Sections 105(a), 363 and 364 of the Bankruptcy Code and

Bankruptcy Rules 4001 and 6004 (D.I. 9) (the "Motion"), and the court having read and considered

the papers presented, and good cause further appearing

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** on a third interim basis as set forth herein.

A.      On or about September 11, 2018, the Debtor and Prestige Capital Corporation

(hereinafter "Prestige")[1] entered into that certain Purchase and Sale Agreement (the "Pre-Petition

Purchase and Sale Agreement") and, in accordance with the Pre-Petition Purchase and Sale

Agreement, Prestige purchased certain accounts receivable from the Debtor.

B.      The Pre-Petition Purchase and Sale Agreement, among other things, granted

Prestige a security interest in the following collateral to secure the Debtor's performance

under the Pre-Petition Purchase and Sale Agreement:

> all accounts, inventory, machinery and equipment, instruments, documents,
> chattel paper and general intangibles (as such terms are defined in the
> Uniform Commercial Code), whether now owned or hereafter created or
> acquired by Seller, wherever located, and all replacements and substitutions
> therefore, accessions thereto, and products and proceeds thereof, and all

---

[1] Effective August 30, 2019, Prestige merged into Prestige Capital Finance LLC and is now known as Prestige Capital Finance, LLC, d/b/a Prestige Capital ("Prestige Capital"). All rights granted to Prestige under the Third Interim Order shall also be granted Prestige Capital and any rights granted to Prestige under prior interim orders shall also be granted to Prestige Capital *nunc pro tunc* to August 30, 2019. Any references here to Prestige shall also be a reference to Prestige Capital.

Page 3 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                   AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                   AND TO USE CASH COLLATERAL

property of Seller at any time in Prestige's possession.  (the "Pre-Petition Collateral").

As of August 31, 2018, Prestige caused to be filed a UCC-1 financing statement, perfecting its security interest in the Pre-Petition Collateral, and which filing also protects Prestige from any subsequent sale of accounts receivable sold to Prestige.

C.       Pursuant to that pre-petition relationship, Prestige asserts that the Debtor owes Prestige for chargebacks and fees as of the petition date, the amount of $30,999.82 (the "Pre-Petition Obligation") which sum Prestige alleges is properly secured by a valid, perfected and enforceable first priority security interest, not subject to avoidance, on all the Debtor's pre-petition and post-petition accounts receivable, whether sold or not, and a second priority security interest in the Debtor's remaining Pre-Petition Collateral.  In addition, as of the Petition Date, the Debtor's account debtors owe Prestige $974,194.67.

D.       As of the Petition Date (defined below), the Debtor is indebted to Magyar Bank ("Magyar") in the amount of approximately $597,420 pursuant to that certain Promissory Note, dated November 16, 2017, evidencing a revolving line of credit (the "Revolver Note"), and in the amount of approximately $4,298,825 pursuant to that certain U.S. Small Business Administration Note and that certain Loan Agreement, both dated November 16, 2017 (the "SBA Note" and together with the Revolver Note, collectively, the "Magyar Notes"), and the obligations thereunder totaling approximately $4,896,245, collectively the "Magyar Obligations").

E.       To secure repayment of the Magyar Obligations, the Debtor granted Magyar a security interest in and liens (the "Magyar Liens") on all of the Debtor's property and assets, including, but not limited to, the property and assets described below, together with all the proceeds

Page 4 of 21
Debtor:            Kline Construction Co., Inc.
Case No.           19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                   AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                   AND TO USE CASH COLLATERAL

---

(including insurance) and products therefrom, whether now owned or hereafter acquired, whether

now existing or hereafter arising, and wherever located: (i) all equipment and machinery, including

power-driven machinery and equipment, furniture and fixtures, together with all replacements

thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection

therewith, (ii) all inventory, raw materials, work in process and supplies, (iii) all contract rights

and general intangibles, (iv) All other accounts, instruments and chattel paper, and (v) all motor

vehicles now owned by Kline Construction Co., Inc. (collectively, the "Magyar Collateral"), and

Magyar also holds mortgages on three (3) parcels of real estate occupied by the Debtor and owned

by non-debtor affiliates, with assignments of rent due by the Debtor to the non-debtor mortgagors

(the "Rent Assignments"). As of November 21, 2017, Magyar caused to be filed UCC-1

financing statements, perfecting its security interests in the Magyar Collateral. By

agreement with Prestige dated September 20, 2018 (the "Subordination Agreement"),

Magyar agreed to subordinate its security interest in all present and future accounts

receivable of the Debtor, whether sold or not, (the "Accounts") to the security interest of

Prestige. Pursuant to the terms of the Subordination Agreement, Magyar is entitled to the

reserves otherwise payable by Prestige to the Debtor under and pursuant to Section 3 of the

Pre-Petition Purchase and Sale Agreement (the "Reserves").

F.      The Motion was granted on an interim basis through September 9, 2019, by

the Court's Interim Order of August 21, 2019 (D.I. 37), which approval was continued by

the Court's Second Interim Order of September 11, 2019 (D.I. 80).

Page 5 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

G.    On September 5, 2019, the United States Trustee appointed a committee under §1102(a)(1) of Title 11 of the United States Code (the "Bankruptcy Code") with the powers and duties provided for under §1103 of the Bankruptcy Code (the "Committee").

THEREFORE, IT IS ORDERED, DETERMINED AND ADJUDGED:

1.    The Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on August 14, 2019 (the "Petition Date") and has continued to operate and manage its business and property since that date as a Debtor-in-Possession, pursuant to Sections 1107-1108 of the Bankruptcy Code.

2.    During the Interim Period (as defined herein) and as provided for in this Second Interim Order, Prestige, upon the terms and conditions more fully set forth in the Pre-Petition Purchase and Sale Agreement (which for all periods from and after the Petition Date shall be known as the "DIP Purchase and Sale Agreement") annexed to the Motion as Exhibit A, is willing to provide the Debtor with post-petition financing through the purchase of open and eligible accounts receivable in accordance with the terms and provisions of the DIP Purchase and Sale Agreement, and to permit the use of cash collateral by the Debtor so as to enable Debtor to continue to operate its business during the Interim Period.

3.    On August 15, 2019, the Debtor filed the Motion seeking approval of the DIP Purchase and Sale Agreement and served the Motion on all parties-in-interest required by the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, including, without

Active\102400304.v2-9/20/19

Page 6 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order: THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

limitation, any party claiming a lien on property of the Debtor's estate, which notice

constitutes good and sufficient notice of the Motion.

4.      The Debtor requires this post-petition financing in order to continue to

operate its business, and the Debtor has been unable to obtain unsecured credit or to obtain

secured credit on any basis other than that offered by Prestige. Unless the post-petition

financing offered by Prestige is obtained, the Debtor maintains that it will be unable to

operate its business, to preserve its assets, or otherwise to protect the interests of its

creditors.

5.      For the period ending October 18th , 2019 (the "Interim Period"), the

provisions of the DIP Purchase and Sale Agreement are therefore fully ratified and

confirmed, including but not limited to, all provisions concerning the granting of a security

interest and the control and direction of payments on the Debtor's accounts receivable.

During the Interim Period, the Debtor is further authorized, without any subsequent

authorization from this Court, including, without limitation, relief from the automatic stay, to take

such actions and execute such documents as may be necessary to fully implement the provisions

set forth in the DIP Purchase and Sale Agreement. All protections and rights granted Prestige

during the Interim Period with regard to Accounts purchased by Prestige during the Interim Period

shall remain in full force and effect subsequent to the Interim Period.

6.      The Pre-Petition Obligations and the obligations which the Debtor will incur

to Prestige pursuant to the DIP Purchase and Sale Agreement, (the "Post-Petition

Obligations", which, together with the Pre-Petition Obligations, are the "Obligations"),

Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:   THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                AND TO USE CASH COLLATERAL

shall be deemed to be valid, post-petition obligations of the Debtor, and all of the

Obligations shall be secured obligations, in accordance with 11 U.S.C. § 364, by valid,

perfected, and enforceable first priority security interests, not subject to avoidance, on all

of the Debtor's pre-petition and post-petition accounts receivable, whether sold or not, and

by valid, perfected and enforceable junior priority security interests, not subject to

avoidance, junior only to the senior priority interest of Magyar, on the items which

constitute the Pre-Petition Collateral, excluding the accounts, on which accounts Prestige's

security interest is first in priority.

     7.    In consideration of the accommodations made available pursuant to this Order

and the DIP Purchase and Sale Agreement, the Debtor irrevocably waives the right, without

the prior written consent of Prestige and Magyar, to grant or impose, or request that any

Court grant or impose, under § 364 of the Code or otherwise:

      i.    Liens or security interests on any property which constitutes Prestige's Pre

         or Post-Petition Collateral and purchased accounts or the Magyar

         Collateral; and

     ii.    Seek or provide authority to use cash collateral, as defined in § 363(a) of

         the Code, out of the proceeds of Prestige's Pre or Post-Petition Collateral

         and purchased accounts, or out of the Magyar Collateral.

     8.    During the Interim Period, the automatic stay of § 362(a) of the Code is hereby

modified to the extent necessary to permit and Prestige is hereby authorized to:

Page 8 of 21
Debtor:            Kline Construction Co., Inc.
Case No.           19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                   AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                   AND TO USE CASH COLLATERAL

i.     seek and receive payment directly from all account debtors making payment on an invoice that has been purchased by Prestige (regardless of whether the invoice was purchased or created before or after the Debtor commenced its Chapter 11 proceeding);

ii.    in its sole discretion, to file any financing statement or other instruments and documents, if any, evidencing its security interests and liens in and on the Pre-Petition Collateral and Post-Petition Collateral and its rights arising from purchased accounts;

iii.   Notwithstanding 11 U.S.C. § 506(b), without further order or authorization from the Court, the Debtor to pay, and Prestige to charge, any costs, fees, and expenses, including without limitation, filing and recording fees, commitment fees, origination fees, processing fees, financing fees, unpaid and accruing pre-petition and post-petition amounts due including chargebacks and fees, and reasonable legal fees and expenses, accruing under and incurred in connection with the Pre-Petition Purchase and Sale Agreement, the DIP Purchase and Sale Agreement (regardless of whether such fees are derived from invoices that were purchased or created before or after the date the Debtor commenced its Chapter 11 case), and the within bankruptcy proceeding, all only to the extent permitted under the DIP Purchase and Sale Agreement; and

Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:   THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

iv.    exercise all of its rights and remedies under the Bankruptcy Code, Article 9 of the UCC or otherwise in the event of a default or termination under the DIP Purchase and Sale Agreement including, without limitation, all rights and remedies of a secured creditor. No party in interest will have the right to contest the enforcement of this Paragraph based on any assertion that Prestige's interest in the Pre-Petition Collateral and Post-Petition Collateral is adequately protected or on any other ground, and no interested party will have the right to seek injunctive relief against the enforcement of, or in conflict with, the provisions of this Order or the DIP Purchase and Sale Agreement. In order to enforce its rights under this paragraph, Prestige must provide five (5) business days' notice to the Debtor, Debtor's counsel, Magyar's counsel, Counsel for Selective (defined herein below), the Committee's Counsel, and the Office of the United States Trustee. Nothing in this subsection iv impairs or affects Magyar's priority in the Magyar Collateral, such that if Prestige seeks to realize on any of the Magyar Collateral (other than the Accounts), Magyar shall be entitled to be paid from the proceeds prior to Prestige without further Order of the Court modifying the stay.

9.    The security interests granted Prestige under the Pre-Petition Purchase and Sale Agreement and the DIP Purchase and Sale Agreement are approved by this Order and

Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order: THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

are further hereby declared to be effective, valid and perfected as of the date of this Order,

without the necessity of filing by any person of any documents or other instruments

required to be filed under applicable non-bankruptcy law and such perfection shall be

binding upon any subsequently appointed trustee, either in a Chapter 11, or under any

other Chapter of the Bankruptcy Code, and upon any and all other creditors of the Debtor

who have or may hereafter extend credit to the Debtor or file a claim of whatever nature,

in this or any subsequent bankruptcy case of the Debtor, and upon any and all subsequent

accounts receivable purchasers and other secured creditors. Nothing in this Order grants

Prestige a priority interest over Magyar in the Magyar Collateral (excluding the Accounts).

The approval of the Pre-Petition Purchase and Sale Agreement is subject to paragraph 20

herein.

　　　　10.　　During the Interim Period, the Debtor is authorized to use cash collateral (including

from the Reserves turned over to the Debtor; provided that during the Interim Period Magyar shall

forbear from enforcing any rights it may have to the Reserves pursuant to the Subordination

Agreement) to pay the reasonable and necessary operating expenses of the Debtor including

statutory fees pursuant to 28 U.S.C. § 1930(a)(6), subject to and in accordance with the revised

budget attached hereto and made a part hereof as **Exhibit A** (the "Approved Budget"), subject to

reasonable and necessary variations of not greater than 15% per line item of expense; provided

that (i) notwithstanding anything that may be contained in the Approved Budget, no cash collateral

or any other collateral of Prestige or Magyar can be used to pay allowed professional fees,

including financial advisor fees, as reflected in the Approved Budget after the week ending

Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

October 6, 2019, without the prior written consent of Magyar and Prestige, which written consent

has yet to be given, and (ii) such amounts as may be paid to professionals as permitted by this

Order (the "Professionals Carve-out") shall be held in escrow by the respective professional

recipient until allowance of fees and expenses have been approved by the Court; and further

provided that the Approved Budget can be amended from time to time without further

authorization of the Court upon the agreement of the Debtor, Prestige, Magyar, Selective and the

Committee, and provided that such consent by Prestige and Magyar, may, upon written notice to

the Debtor and the Committee, be terminated if there exists uncured pre-petition or post-petition

chargebacks or there exists other material defaults under the DIP Purchase and Sale Agreement or

this approved Order. Prestige or Magyar must provide at least three (3) business days' notice to

the Debtor, Debtor's counsel, Magyar's counsel or Prestige's counsel, as applicable,

Selective' s counsel, the Committee's counsel, and the Office of the United States Trustee

before the use of cash collateral ceases.    Notwithstanding the forgoing, no portion of the

Professionals Carve-out shall be paid to professionals unless and until the Debtor has (i) paid to

Magyar, and Magyar has received, its monthly payments, as set forth in the Approved Budget, (ii)

paid to Magyar, and Magyar has received, the monthly rent due on account of the Rent

Assignments, and (iii) timely satisfied its reporting requirements as set forth in paragraph 14 hereof

for the period through the prior week end.

    11.    In consideration for Magyar's consent on an interim basis to the arrangement set

forth within the DIP Purchase and Sale Agreement and this Order, the Debtor hereby

acknowledges the liens and security interests granted to Magyar pursuant to and in connection

Page 12 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

with the Magyar Notes (including, without limitation, all security agreements, pledge agreements,

deeds of trust, mortgages and other security documents executed by the Debtor in favor of Magyar)

are approved by this Order and are further declared to be effective, valid, binding, perfected,

enforceable, liens and security interests in the Magyar Collateral described therein and herein

above as of the date of this Order, without the necessity of filing by any person of any

documents or other instruments required to be filed under applicable non-bankruptcy law

and such perfection shall be binding upon any subsequently appointed trustee, either in a

Chapter 11, or under any other Chapter of the Bankruptcy Code, and upon any and all

other creditors of the Debtor who have or may hereafter extend credit to the Debtor or file

a claim of whatever nature, in this or any subsequent bankruptcy case of the Debtor, and

upon any and all subsequent accounts receivable purchasers and other secured creditors.

In addition, during the Interim Period, as adequate protection, the Debtor shall pay to

Magyar payments in the equivalent amount of monthly interest in the amounts set forth in

the Approved Budget on account of the SBA Note and the Revolver Note, and to the extent

of any diminution in the value of the Magyar Collateral resulting from the Debtor's use of

cash collateral and as otherwise herein permitted Magyar is hereby granted a security

interest and lien (the "Magyar Replacement Lien"), subject only to Prestige's first priority

security interest and lien on the Debtor's pre-petition and post-petition accounts receivable

and Prestige's rights arising from the purchased accounts. Nothing in this Order impairs

or waives Magyar's right to challenge at or before the final hearing on the Motion (the

"Final Hearing") the amount or adequacy of the Magyar Replacement Lien and payments

Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order: THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

hereunder as adequate protection for the Debtor's use of the Magyar Collateral. The

approval of the liens and security interests granted to Magyar pursuant to and in connection with

the Magyar Notes is subject to paragraph 20 herein.

12.     Other than as expressly set forth herein, nothing herein shall diminish or

detract in any way from the rights that are or may be possessed by Debtor, due to the filing

of financing statements prior to the filing of the Voluntary Petition herein, or otherwise due

to the operation of applicable non-bankruptcy law.

13.     In the event that Prestige files an unsecured claim in the above-captioned

proceeding for any portion of the Debtor's obligations under the above-described post-

petition financing, such claims shall have, pursuant to Bankruptcy Code section 364(c)(1)

the priority of an expense of administration in the Debtor's bankruptcy case, under sections

503(b) and 507(a)(2) of the Bankruptcy Code to the extent that its security interests are insufficient

to reimburse Prestige the amounts owed it by the Debtor. Said priority shall be senior to any other

administrative expenses in Debtor's bankruptcy case of the kind specified in section

503(b) of the Bankruptcy Code and will at all times be senior to the rights of the Debtor,

except as to (i) the fees of the United States Trustee pursuant to 28 U.S.C. §1930(a)(6)

and (ii) allowed fees and expenses payable to professionals retained by the Debtors and

the Committee. Notwithstanding the above, no cost or expenses of administration that

have been or may be incurred in this case, and no priority claims are or will be prior to or

on a parity with Prestige's super-priority administrative claim, except as provided above,

whether on account of any claim of Prestige against the Debtor arising out of the sale of

Page 14 of 21
Debtor:          Kline Construction Co., Inc.
Case No.        19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

the accounts receivable or otherwise, and upon entry of a Final Order, no costs or expenses of administration will be imposed upon Prestige, its claims, or the Pre-Petition Collateral and Post-Petition Collateral pursuant to § 506(c) of the Code or otherwise.

14.    On or before September 25, 2019, and on each Wednesday thereafter during the Interim Period, the Debtor shall provide the following reports for the week ending the prior Friday (e.g. on September 25, 2019 for the week ending September 20, etc.) to counsel for each of Magyar, Prestige, the Committee and Selective, with certification of the Debtor's CRO: (a) cumulative Actual versus Budget report for the weekly period on a line item basis, (b) aged accounts payable report for the weekly period, (c) aged accounts receivable report for the weekly period, with a companion report delineating accounts from bonded jobs, if any, and (d) the forms of Prestige customer reports, which shall include the face amount of the purchased accounts receivable for the period, fees and costs, and Reserve balance, along with a statement of the amount of Reserves paid by Prestige to the Debtor.

15.    The Court has considered and determined the matters addressed in this Order pursuant to its power under §§ 363(b) and 364 of the Code to authorize the Debtor to execute and perform under the DIP Purchase and Sale Agreement and to grant certain security interests and liens to Prestige, and thus, each of such terms and conditions, as part of an authorization under such sections, is subject to the protections contained in §§ 363(m) and 364(e) of the Bankruptcy Code.

16.    Notwithstanding anything in the DIP Purchase and Sale Agreement to the contrary, the Bankruptcy Court retains jurisdiction over any and all matters arising under or

Page 15 of 21
Debtor:             Kline Construction Co., Inc.
Case No.            19-25757 (JNP )
Caption of Order:   THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                    AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                    AND TO USE CASH COLLATERAL

---

in connection with this financing between the Debtor and Prestige and this Order including, without limitation, all actions commenced by Prestige against the Debtor.

17.    To the extent there is any inconsistency between the Order and the terms of the Motion, the Pre-Petition Purchase and Sale Agreement, and/or the DIP Purchase and Sale Agreement, the terms of this Order will govern.

18.    The Debtor hereby acknowledges that the liens and security interests granted to Prestige pursuant to and in connection with the Pre-Petition Purchase and Sale Agreement (including, without limitation, all security agreements, pledge agreements, deeds of trust and other security documents executed by the Debtor in favor of Prestige) are: (i) valid, binding, perfected, enforceable, liens and security interests in the Pre-Petition Collateral described in the Pre-Petition Purchase and Sale Agreement (collectively with the documents delivered therewith), and (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

19.    The Debtor hereby acknowledges that the terms and conditions of the DIP Purchase and Sale Agreement constitute valid and binding obligations, enforceable against the Debtor in accordance with its terms. No obligation, payment, transfer or grant of security of, by and/or between Prestige and/or the Debtor under the DIP Purchase and Sale Agreement or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent

Page 16 of 21
Debtor:         Kline Construction Co., Inc.
Case No.        19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                AND TO USE CASH COLLATERAL

---

Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

20.    The stipulations and admissions contained in this Interim Order shall be binding on the Debtor and its estate and every party in interest, including, without limitation, the Committee, unless, and solely to the extent that any such party in interest (other than the Debtor which is bound by these stipulations and admissions) challenges the extent, validity, perfection, priority or enforceability of the liens acknowledged by the Debtor herein by filing an appropriate adversary proceeding (a "Lien Challenge") no later than 60 days after the date of an order approving the appointment of counsel to the Committee (or such longer period for cause shown before the expiration of such period) (the "Challenge Period"). The Debtor hereby grants to the Committee standing to file a Lien Challenge without further notice or further Order of the Court; provided, however, that Prestige and Magyar reserve the right to assert that the Debtor (a) does not have substantive standing or (b) cannot consent to the Committee's standing; and nevertheless, despite this reservation of rights of Prestige and Magyar, the Committee shall not be prejudiced by failing to assert such substantive standing rights within the sixty (60) day period provided for herein.

21.    The requirement set forth in Local Rule 9013-2 that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

22.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

Active\102400304.v2-9/20/19

Page 17 of 21
Debtor:           Kline Construction Co., Inc.
Case No.          19-25757 (JNP )
Caption of Order: THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                  AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                  AND TO USE CASH COLLATERAL

---

23.     This is an interlocutory order. Nothing contained herein shall be deemed or construed to (a) limit the secured creditors to the relief granted herein: (b) bar the secured creditors from seeking other and further relief (including without limitation relief from the terms of this Order) for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same: or (c) require the secured creditors to make any further loans or advances to, or purchase accounts of, the Debtor. The Order may be modified for cause shown by the Debtor, the secured creditor or any other party-in-interest on due notice. No such modification, however, shall deprive the secured creditors of their interest in Debtor's property (pre-petition and post-petition) or any other rights, remedies or protections afforded to secured creditors under this Interim Order. For these purposes, the term secured creditors includes Prestige and Magyar.

24.     From and after August 19, 2019, only Ronald Samarro, the CRO of the Debtor, shall have authority to designate Accounts to be purchased by Prestige under the DIP Purchase and Sale Agreement and Prestige shall not accept direction from any other officer of the Debtor with regard to the sale and purchase of Accounts of the Debtor.

25.     Nothing in this Interim Order shall in any way prime or affect the rights of Selective Insurance Company of America ("Selective") or its past, present or future parents, subsidiaries or affiliates (the "Surety") as to: (a) any accounts receivable it has received and/or is presently holding and/or may collect in the future, (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds, and (c) any letter of credit related to any indemnity, collateral trust, bond or agreements between or involving the Surety and the Debtor or any of the Debtor's non-debtor affiliates (collectively (a) to (c), the "Surety Assets"). Nothing in this Interim

Page 18 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order: THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

---

Order shall affect the rights of the Surety under any current or future indemnity, collateral trust, or related agreements between or involving the Surety and the Debtor or any of the Debtor's non-debtor affiliates as to the Surety Assets or otherwise, including but not limited to the General Agreement of Indemnity furnished by the Debtor to Selective in consideration for Selective's issuance of bonds on behalf of the Debtor.  In addition, nothing in this Interim Order shall prime or otherwise impact:  (x) current or future setoff and/or recoupment rights and/or the lien rights and/or trust claims of the Surety or of any party to whose rights the Surety, has or may become subrogated and/or (y) any existing or future subrogation or other common law rights of the Surety. For the Interim Period, the Debtor shall not use any proceeds of the bonded contracts except to pay bonded obligations, provided, however, Selective is not giving up any claim to these proceeds to the extent such claim exists.  In addition, notwithstanding anything in this Interim Order to the contrary, during the Interim Period, the rights, claims and defenses of the Debtor and of the Surety, including, but not limited to, the Surety's rights under any properly perfected liens and claims (including trust claims) and/or claim for equitable rights of subrogation, and rights of the Debtor and of any successors in interest to the Debtor, and any creditors, to object to any such liens, claims and/or equitable subrogation and/or trust claims and/or other rights, are fully preserved.  Nothing herein is an admission by the Surety or the Debtor or creditors, or a determination by the Bankruptcy Court, regarding any claims under any bonds, and the Surety, the Debtor and creditors reserve any and all rights, remedies and defenses in connection therewith.  In addition, any accounts receivable owed to the Debtor from the bonded contracts are not part of the receivables which the Debtor may sell to Prestige.

Active\102400304.v2-9/20/19

Page 19 of 21
Debtor:        Kline Construction Co., Inc.
Case No.       19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                   AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                   AND TO USE CASH COLLATERAL

---

26.    From and after August 19, 2019, except upon further order of the Court on notice to Selective, the Debtor shall not sell and Prestige shall not purchase any Accounts for contracts to perform work of services which are bonded.

27.    Notwithstanding the terms and provisions hereof, subject to paragraph 20 herein, for all periods of time subsequent to the Interim Period, the Committee shall not be deemed to have waived any right or objection of any kind or nature.

28.    Nothing herein shall prime or affect the rights, title, interest and liens of Caterpillar Financial Services Corporation ("Caterpillar") and PACCAR Financial Corp ("PACCAR"), and the proceeds thereof.

29.    Beginning with the month of September, 2019, the Debtor shall pay directly to Magyar the rent due by the Debtor for occupancy of the real estate encumbered by Magyar's Rent Assignments (subject to a $2,000 credit for partial payment of $2,000 to Kline & Kline for September, 2019), as set forth in the Approved Budget. The Debtor's right is reserved to assert that this payment and others made to Magyar from the sale of Magyar Collateral and other non-debtor property is adequate protection for Magyar.

## FINAL HEARING ORDER

30.    IT IS FURTHER ORDERED, AND NOTICE IS HEREBY GIVEN that any creditor or other interested party having any objection to this Second Interim Order shall file with the Clerk of this Court and serve upon counsel for each of the Debtor, the Committee, Prestige, Magyar, Caterpillar, PACCAR and Selective on or before __October 11th____, 2019, at 2 p.m., a written objection and shall appear to advocate said objection at a Final Hearing to be held at 11:30

Page 20 of 21
Debtor:          Kline Construction Co., Inc.
Case No.         19-25757 (JNP )
Caption of Order:  THIRD INTERIM ORDER APPROVING DIP PURCHASE AND SALE AGREEMENT AND
                 AUTHORIZING DEBTOR TO OBTAIN FINANCING FROM PRESTIGE CAPITAL CORPORATION
                 AND TO USE CASH COLLATERAL

a m. on ___October 18th___, 2019, or as soon thereafter as counsel may be heard, in Courtroom

4C of the United States Bankruptcy Court, 400 Cooper Street, Camden, New Jersey. In the event

no objections are filed or not advocated at such hearing, then, unless otherwise continued on an

interim basis, this Order shall continue in full force and effect and shall be deemed a Final Order

without further notice or hearing in accordance with Federal Rules of Bankruptcy Procedure

4001(d)(3).

## NOTICE ORDER

31.    IT IS FURTHER ORDERED that the Debtor serve a copy of this Order and Notice

by first class mail within one (1) business day from the date hereof, on (1) the United States

Trustee, (2) the District Director of the Internal Revenue Service, (3) the New Jersey Division of

Taxation, (4) all known secured creditors and (5) counsel to each of the Committee, Prestige,

Magyar, Caterpillar, PACCAR and Selective. Debtor shall immediately file with the Clerk a

Certificate of Service of said mailing.

Active\102400304.v2-9/20/19

**KLINE CONSTRUCTION CO., INC.**
**CASH RECEIPTS AND DISBURSEMENTS**
**UPDATED 9/20/19**

| | 8/13-8/19 | 8/20-8/26 | 8/27-9/2 | 9/2-9/8 | 9/9-9/15 | 9/16-9/22 | 9/23-9/29 | 9/30-10/6 | 10/7-10/13 | 10/14-10/20 | 10/21-10/27 | 10/28-11/3 | 11/4-11/10 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH RECEIPTS:** | | | | | | | | | | | | | | |
| DIRECT AR RECEIPTS | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 3,900,000 |
| FACTOR RECEIPTS-PRESTIGE @80% | 85,000 | 85,000 | 95,000 | 90,000 | 90,000 | 90,000 | 95,000 | 90,000 | 90,000 | 90,000 | 90,000 | 95,000 | 90,000 | 1,175,000 |
| OTHER RECEIPTS | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL RECEIPTS** | 385,000 | 385,000 | 395,000 | 390,000 | 390,000 | 390,000 | 395,000 | 390,000 | 390,000 | 390,000 | 390,000 | 395,000 | 390,000 | 5,075,000 |
| **CASH DISBURSEMENTS:** | | | | | | | | | | | | | | |
| PAYROLL AND TAXES | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 137,834 | 1,791,842 |
| UNION BENEFITS | - | 40,500 | 42,616 | - | 40,500 | - | - | 42,565 | 40,500 | - | - | 40,500 | 40,500 | 121,500 |
| EQUIPMENT PAYMENTS DIRECT | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 127,744 |
| MATERIALS | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 14,700 | 71,500 |
| FUEL EXPENSE | 5,800 | 5,800 | - | - | - | - | - | 10,300 | 5,800 | - | 10,300 | - | - | 191,100 |
| LICENSE AND REGISTRATIONS | - | - | 9,150 | - | - | - | - | - | - | - | - | - | - | 17,400 |
| RENT EXPENSE-YARD'S | - | - | - | - | - | - | - | - | - | - | - | - | - | 29,730 |
| SUBCONTRACTORS | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 663,000 |
| OTHER JOB EXPENSES | 4,000 | 4,000 | 4,000 | - | - | - | - | - | - | - | - | - | - | 12,000 |
| HEALTH AND DENTAL INSURANCE NON-UNION | - | - | - | - | - | - | - | 14,407 | - | - | - | - | - | 14,407 |
| RENT EXPENSE-OFFICE - to Magyar Bank | 5,000 | - | 19,500 | 19,500 | 5,000 | - | - | 19,500 | - | - | 8,203 | 19,500 | - | 15,000 |
| UTILITIES / TELEPHONE | - | - | - | - | - | - | - | - | - | 5,000 | - | - | - | 22,842 |
| EQUIPMENT MAINTENANCE | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 32,500 |
| OFFICE/POSTAGE EXPENSE | 2,500 | - | 1,500 | 1,500 | 2,500 | - | 1,500 | 2,500 | - | 2,500 | - | 1,500 | - | 7,500 |
| PROFESSIONAL FEES | - | 2,500 | 2,500 | - | - | - | - | 2,500 | - | - | - | 2,500 | - | - |
| IT AND HR CONSULTANTS | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 34,255 |
| CHIEF RESTRUCTURING OFFICER | 8,000 | 8,000 | 9,000 | 8,000 | 9,000 | 8,000 | 8,000 | 8,000 | 8,000 | 9,000 | 8,000 | 8,000 | 8,000 | 107,000 |
| AUTOMOBILE EXPENSES | - | 2,439 | - | - | - | - | - | - | - | - | - | 4,415 | - | 2,439 |
| OTHER OPERATING EXPENSES | 3,000 | 3,000 | 3,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 25,000 |
| **TOTAL OPERATING DISBURSEMENTS** | 234,169 | 234,169 | 286,874 | 250,169 | 275,669 | 234,969 | 229,169 | 319,941 | 269,669 | 235,169 | 243,172 | 267,384 | 312,234 | 3,393,577 |
| **NET OPERATING CASH FLOW** | 150,831 | 150,831 | 108,126 | 139,831 | 114,331 | 155,031 | 165,831 | 70,059 | 120,331 | 154,831 | 146,828 | 127,616 | 77,766 | 1,681,423 |
| **REORGANIZATION COSTS:** | | | | | | | | | | | | | | |
| PROFESSIONAL FEE'S DEBTOR | - | - | - | - | 15,000 | 15,000 | - | 15,000 | 15,000 | 60,000 | 15,000 | 15,000 | 15,000 | 130,000 |
| FINANCIAL ADVISOR | - | - | - | - | - | 10,000 | - | 10,000 | - | 20,000 | 20,000 | 10,000 | 10,000 | 70,000 |
| PROFESSIONAL FEE'S COMMITTEE | - | - | - | - | - | 2,500 | - | 2,500 | - | 5,000 | 5,000 | - | 5,000 | 25,000 |
| COMMITTEE MEMBERS | - | - | - | - | - | - | - | - | - | 5,000 | - | - | - | 5,000 |
| MAGYAR BANK - SBA LOAN | - | - | 27,775 | - | - | - | - | 27,775 | - | - | - | 27,775 | - | 83,325 |
| MAGYAR BANK - LINE OF CREDIT | - | - | 3,325 | - | - | - | - | 3,325 | - | - | - | 3,325 | - | 9,975 |
| INSURANCE FINANCING | - | 109,972 | - | - | - | 109,972 | - | - | 109,972 | - | - | - | 109,972 | 483,880 |
| CRITICAL VENDORS | - | 182,100 | - | - | - | - | - | - | - | - | - | - | - | 182,100 |
| UNITED STATES TRUSTEE QUARTERLY FEE | - | - | - | - | - | - | - | - | - | - | 25,000 | - | - | 25,000 |
| **TOTAL REORGANIZATION DISBURSEMENTS** | - | 292,072 | 31,100 | - | 17,500 | 109,972 | - | 58,600 | 109,972 | 85,000 | 40,000 | 86,100 | 139,972 | 970,280 |
| **NET CASH FLOW:** | 150,831 | (142,041) | 77,026 | 139,831 | 96,831 | 45,059 | 165,831 | 11,459 | 10,359 | 69,831 | 106,828 | 41,516 | (62,206) | 711,155 |
| BEGINNING CASH BALANCE 8/14/19 | 28,500 | 179,331 | 37,290 | 114,316 | 254,147 | 350,978 | 396,037 | 561,868 | 573,327 | 583,686 | 653,517 | 760,345 | 801,861 | 28,500 |
| NET CASH FLOW | 150,831 | (142,041) | 77,026 | 139,831 | 96,831 | 45,059 | 165,831 | 11,459 | 10,359 | 69,831 | 106,828 | 41,516 | (62,206) | 711,155 |
| **ENDING CASH BALANCE** | 179,331 | 37,290 | 114,316 | 254,147 | 350,978 | 396,037 | 561,868 | 573,327 | 583,686 | 653,517 | 760,345 | 801,861 | 739,655 | 739,655 |

Active11891450000111026460661.v1•9/23/2019