| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-2(c)** Damien Nicholas Tancredi (DT 1383) Flaster/Greenberg, P.C. 1810 Chapel Avenue West Cherry Hill, NJ 08002 (215) 587-5675 *Proposed Counsel to Douglas S. Stanger Chapter 7 Trustee* | |
| In re: KLINE CONSTRUCTION CO., INC., Debtor. | Chapter 7 Case No. 19-25757 Hon. Jerrold N. Poslusny, Jr. |

Order Filed on January 31, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey

## CONSENT ORDER GOVERNING THE CHAPTER 7 TRUSTEE'S COLLECTION OF ACCOUNTS RECEIVABLE AND LIQUIDATION OF ASSETS

The relief set forth on the following pages, numbered two (2) through _____, is hereby

ORDERED.

**DATED: January 31, 2020**

_____

Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Court

Page 2
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

THIS MATTER having been presented to the Court upon the consent of Douglas S. Stanger (the "Trustee"), Chapter 7 Trustee for the Estate of Kline Construction Co., Inc. (the "Estate"); by and through his counsel Flaster/Greenberg, P.C. (William J Burnett and Damien N. Tancredi appearing) and Magyar Bank ("Magyar Bank"), by and through its counsel, McCarter & English, LLP (Sheila Calello appearing); and Prestige Capital Corp. ("Prestige") by and through its counsel Rabinowitz, Lubetkin & Tully, LLC (Jonathan I. Rabinowitz appearing); and Selective Insurance Company of America ("Selective") by and through its counsel McElroy, Deutsch, Mulvaney & Carpenter, LLP (Gary D. Bressler appearing); and the Trustee, the Debtor, Prestige, and Magyar Bank being known as the "Parties;" and Prestige having purchased certain accounts receivable pursuant to the Purchased AR Schedule attached hereto as Exhibit "A" (the "Purchased AR") pursuant to the Pre-Petition and Post-Petition Purchase and Sale Agreements (as defined in the Fifth Interim Order Approving DIP Purchase and Sale Agreement and Authorizing Debtor to Obtain Financing from Prestige Capital Corporation and to Use Cash Collateral (the "Fifth Interim Cash Collateral Order")); and Prestige also having a first position security interest in the other accounts receivable of the Debtor that were not Purchased AR pursuant to the Not-Purchased Debtor AR Schedule attached hereto as Exhibit "B" (the "Not-Purchased Debtor AR"); and certain of the receivables in the Not-Purchased Debtor AR schedule include receivables that are due from the following account debtors: Comcast, Atlantic City Electric, Matrix, Riggs Distler and ULS – Utility Line Services, Inc. which are also account debtors of the Purchased AR (the "Prestige Account Debtors"); and a list of such receivables due from the Prestige Account Debtors is detailed on the Schedule of AR Due from Prestige Account Debtors attached hereto as Exhibit "C" (the "AR Due From Prestige Account Debtors");  and

ME1 32387256v.1

Page 3
In re:   Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

Magyar Bank having a second position in all of the Debtor's accounts receivable (including without limitation, the AR Due From Prestige Account Debtors and the Not-Purchased Debtor AR) (collectively, the "Debtor AR"), with a right to collect the "Reserves" (as defined in the Fifth Interim Cash Collateral Order) related to the Purchased AR, and a first position security interest in: (i) all other assets of the Debtor including, without limitation, the Debtor's machinery and equipment (the "Tangible Assets")[1], and (ii) the cash in the Debtor's bank account, except to the extent that cash represents proceeds of the Purchased AR and the Not-Purchased Debtor AR in which Prestige has a first lien and Magyar has a second lien, as of the date hereof all of which is cash collateral ("Magyar Cash Collateral"); and the Parties desiring that the proceeds thereof be allocated among the Estate, Magyar Bank, and Prestige, subject to the terms and conditions of this Consent Order;

NOW, THEREFORE, THE UNDERSIGNED HEREBY STIPULATE AND AGREE AS FOLLOWS:

1.      Having properly issued and served a notice of default, Prestige shall, consistent with the terms and conditions of this Order, have relief from the automatic stay pursuant to paragraph 8(iv) of the Fifth Interim Cash Collateral Order to exercise all rights and remedies on the Purchased AR and the Debtor AR including without limitation enforcement of its rights under applicable non-bankruptcy law.

2.      Subject to the terms of this Order, Prestige is permitted to collect the AR Due From

---

[1] The Tangible Assets expressly do not include (a) causes of action that the Trustee may assert pursuant to Chapter 5 of the Bankruptcy Code because such causes of action are not subject to any security interest by any party, (b) titled equipment owned by the Debtor but for which Magyar Bank does not hold the titles but under applicable law would be required to hold such titles to be perfected and (c) any other assets in which Magyar Bank does not currently hold a valid perfected security interest.

MEI 32387256v.1

Page 4
In re: Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

the Prestige Account Debtors.

3.     Prestige shall provide the Trustee and Magyar with a monthly accounting of the collection of the Purchased AR and the AR of the Prestige Account Debtors and the application of such collections to Prestige's outstanding balance (including but not limited to the sums referenced in Paragraph 17 hereof), any fees due thereof, the Reserves, if any and any collection fees due to Prestige as provided in this Order.  Such accounting of Prestige's debt, fees and costs are subject to review and verification by the Trustee.

4.     After collection and upon receipt of the proceeds of the Purchased AR and the AR Due From the Prestige Account Debtors, Prestige shall immediately apply said proceeds to Prestige's verified outstanding balance, any fees due thereof and as otherwise provided in this Order, and upon payment of all amounts due from the Debtor to Prestige, pay the Reserves to Magyar Bank, and thereafter turn over any residual equity to the Debtor's estate within five (5) business days.

5.     Notwithstanding, paragraph 1 hereof, Prestige shall forebear from exercising its rights with respect to the Not-Purchased Debtor AR from account debtors that are not AR Due From Prestige Account Debtors (collectively, the "Trustee's AR") to enable the Trustee to collect the Trustee's AR pursuant to the terms hereof.  As of the date of conversion, December 23, 2019, the Parties hereby consent to and permit the Trustee to collect the Trustee's AR, with all liens attaching to the proceeds thereof in the same priority and amount as existed in the Trustee's AR as of the date of filing of the petition (the "Petition Date") and pursuant to the terms of the Fifth Interim Cash Collateral Order.

6.     For the avoidance of doubt, neither Prestige nor the Chapter 7 Trustee shall collect

Page 5
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

any accounts receivable owed to the Debtor from any contracts that Selective bonded on behalf of

Debtor as listed on the schedule attached hereto as Exhibit "D" (the Bonded "AR") , as the Parties

agree to treat those bonded contract proceeds as contractual and/or statutory trust funds and/or

funds impressed with an equitable lien and therefore not property of the estate, and Selective

reserves all of its rights, defenses and positions accordingly.  The Parties further agree to treat the

accounts receivable of the Debtor related to contracts bonded by Selective as being subject to an

express or constructive trust in favor of trust beneficiaries, including Selective, requiring such

accounts receivable be remitted, from the Trustee and Debtor's estate and directly from obligors,

to Selective on behalf of trust beneficiaries including Selective; that Selective is authorized to

collect from obligors and pay valid trust claims from trust funds; that Selective is granted relief

from the automatic stay to the extent required pursuant to 11 U.S.C. § 362(d) to exercise its rights

under the Indemnity Agreement, including the right but not the requirement to perform contracts.

The Chapter 7 Trustee agrees to reasonably cooperate with Selective to provide information and

documentation to Selective about the Debtor's contracts that were bonded by Selective and any

accounts receivable in connection therewith.

7.    Upon entry of this Consent Order, Selective's motion for relief from stay filed on

January 2, 2020 [Docket 291] is hereby marked resolved.

8.    Prestige and Magyar Bank agree and consent to the Trustee using the proceeds of

the collection of the Trustee's AR plus the proceeds of any AR Due From Prestige Account

Debtors only as collected by the Trustee in accordance with Paragraph 9 hereof (collectively, the

"Trustee's AR Proceeds") to: (i) first pay any costs, fees, or expenses expended by the Estate in

Page 6
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

the collection of the Trustee's AR, or contingency fee collection fees by outside counsel[2], and, thereafter, (ii) retain a carve-out equal to 20% of the remaining balance of the net Trustee's AR Proceeds for the benefit of the Estate (the carve-out in (ii) is referred to as the "AR Carve-Out"). The AR Carve-Out shall be subject to the cap provided in Paragraph 15 hereof.  The remaining Trustee's AR Proceeds after the AR Carve-Out shall, within thirty (30) days, be turned over to Prestige until its claim is paid in full, and then to Magyar.  Magyar Bank and Prestige reserve the right to review and object to any specific costs, fees and expenses contemplated under subsection (i) not otherwise previously approved by Magyar Bank and Prestige.

9.    After Prestige is paid in full, it may continue to collect any remaining balance of the AR Due From Prestige Account Debtors, and remit the proceeds net of Prestige's collection fee of 10% of collections to the Chapter 7 estate as provided in Paragraph 10 below.  Nevertheless, after Prestige is paid in full, the Trustee may, at any time but upon written notice to counsel to Prestige, elect to terminate the collection by Prestige of any remaining AR Due From Prestige Account Debtors to enable the Trustee to collect such AR himself for the benefit of the estate.

10.    The Trustee shall be entitled to retain from any proceeds of the collection of AR Due From Prestige Account Debtors turned over to the Chapter 7 estate by Prestige, after Prestige is paid in full, a fee of 10% (the "Prestige Proceeds Carve-Out"). The Prestige Proceeds Carve-Out shall be used by the Trustee free and clear of all liens and encumbrances for the benefit of the Debtor's estate and creditors in the order and priority of the claims as provided in the Bankruptcy Code and as otherwise approved by this Court. The Prestige Proceeds Carve-Out shall be subject

---

[2] The Trustee agrees that it will not send any of the Trustee's AR to contingency fee counsel without first obtaining Magyar Bank's written approval.

MEI 32387256v.1

to the cap and accounting requirement provided in Paragraph 15 hereof.  The Trustee shall not deduct any of its costs, fees or expenses from the proceeds remitted by Prestige and once it retains the Prestige Proceeds Carve-Out, the Trustee will remit the remainder of the proceeds to Magyar Bank within thirty (30) days.

11.     Prestige and Magyar Bank agree and consent to the Trustee using the proceeds of the liquidation and sale of the Tangible Assets (collectively, the "Tangible Asset Proceeds") to: (i) first pay any costs, fees, or expenses expended by the Estate in the liquidation and sale of the Tangible Assets, which shall include but shall not be limited to any auctioneers fees and expenses, and, thereafter, (ii) retain a carve-out equal to 25% of the remaining balance of the net Tangible Asset Proceeds for the benefit of the Estate (the carve-out in (ii) is referred to as the "Tangible Asset Carve-Out").  The Tangible Asset Carve-Out shall be subject to the cap and accounting requirements provided in Paragraph 15 hereof.  The remaining Tangible Asset Proceeds after the Tangible Asset Carve-Out shall, within thirty (30) days, be turned over to Magyar Bank, until its claim is paid in full, and then to Prestige.  Magyar Bank reserves the right to review and object to any specific costs, fees and expenses contemplated under subsection (i) not otherwise previously approved by Magyar Bank.

12.     The Trustee's AR Carve-Out and Tangible Asset Carve-Out shall be used by the Trustee free and clear of all liens and encumbrances for the benefit of the Debtor's estate and creditors in the order and priority of the claims as provided in the Bankruptcy Code and as otherwise approved by this Court.

13.     To the extent not otherwise previously authorized by this Court, The Trustee is hereby authorized to operate pursuant to §721 of the Bankruptcy Code pursuant to the terms of the

Page 8
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

Order and the Order Converting Case to Chapter 7 entered by this Court on December 23, 2019 (the "Conversion Order").

14.    Subject to prior written approval by counsel to Magyar Bank, but such approval shall not be unreasonably withheld, the Trustee shall be able to use the Magyar Cash Collateral to pay for: (i) the expenses permitted pursuant to the Conversion Order; (ii) those expenses necessary to allow for the completion of billing of the Debtor's accounts receivable and maintenance of the Debtor's computer system to allow for the completion of that billing and collection of all of the Debtor's accounts receivable; (iii) any insurance for appropriate periods to insure the Tangible Assets from loss and liability insurance needed to conduct any auction of the Tangible Assets; (iv) any security, locks, utilities or other necessary expenses needed to safeguard the assets until an auction of the Tangible Assets can occur; (v) any cost to retrieve Tangible Assets that are not located on the site of the auction and any costs to prepare the Tangible Asset for the auction and (vi) $27,000 to Fox Rothschild LLP and $25,000 to Gavin Solmonese on account of the Professionals Carve-out as provided for in, but not yet paid under, the Fifth Interim Cash Collateral Order.

15.    Notwithstanding anything else to the contrary in this Order, the sum total of:  (i) the AR Carve-Out, plus (ii) the Prestige Proceeds Carve-Out, plus (iii) the Tangible Asset Carve-Out shall not exceed $300,000, in the aggregate (the "Capped Carve-Out"); provided however that, irrespective of the total AR Carve-Out and the Prestige Proceeds Carve-Out, there shall be a sub-cap of the Tangible Asset Carve-Out in the amount of $200,000.  After payment or retention by the estate of the Capped Carve-Out and the Magyar Bank approved expenses set forth in paragraph 14, all remaining funds in the estate shall be paid to Magyar Bank, and Prestige in the order of

Page 9
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

their liens as of the Petition Date.  The Trustee will provide monthly accountings to Magyar Bank of (a) proceeds received from Prestige, (b) proceeds collected by the Trustee from the Trustee AR, (c) proceeds from the Tangible Asset Sale and (d) sums retained by the Trustee as part of the Capped Carve-Out.

16.    Magyar Bank's and Prestige's consent to the Capped Carve-Out is specifically conditioned upon it receiving the net proceeds described in paragraphs 8, 10, 11 and 15, without further deduction, charge, surcharge, claim or withholding. Specifically other than as otherwise provided in this Order, (i) no other costs or expenses of administration will be imposed upon Prestige or Magyar, their claims, or the Purchased AR, the Debtor AR or the Tangible Assets, or the proceeds from any of the foregoing, pursuant to §506(c) of the Bankruptcy Code or otherwise, and (ii)  the Trustee, the Debtor and the Chapter 7 estate hereby waive and release and forever discharges Prestige and Magyar and their past, present or future officers, directors, attorneys, agents, employees, parent company, affiliates, subsidiaries and successors and assigns from any liability, damage, claim, loss, remedy or expense of any kind that they may have against Prestige and Magyar or any of them, from the beginning of time to and including the date of this Order, including but not limited to those arising out of or, in any way, relating to the pre- and post-petition purchase and sale agreements and the various financing orders entered by the Court in this case.

17.    The Trustee acknowledges that one of the Prestige Account Debtors, Atlantic City Electric, paid to the Debtor: (i) $15,695.96 on account of certain Purchased AR and (ii) approximately $63,346.94 on account of certain Not-Purchased Debtor AR.  Such payments shall be detailed and included in Prestige's accounting of its debt as required by Paragraph 3 hereof.

Page 10
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

Notwithstanding anything to the contrary herein, until Prestige is paid in full, Prestige's rights are fully preserved with respect to such sums including but not limited to (a) the Trustee's acknowledgment that Prestige retains an express or constructive trust over all such sums, that they are not property of the Debtor's estate and/or that Prestige has a valid perfected first lien in these proceeds and (b) the right of Prestige to enforce its rights under the Bankruptcy Code, Bankruptcy Rules, prior financing orders entered by the Court and applicable non-bankruptcy law.    After Prestige is paid in full, there shall be no express or constructive trust of such fund and Prestige shall have no further rights to collect such funds.    Within five (5) business days of the date of entry hereof, the Trustee shall: (1) turnover to Prestige $15,695.96; and (2) reissue checks in the approximate amount of $40,000 that the Debtor previously issued to sub-contractors on the Debtor's Comcast jobs that have been returned for insufficient funds.

Page 11
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

18.    This order shall be effective immediately upon its entry and there shall be no stay

thereof under Fed. R. Bankr. P. 4001(a)(3) or otherwise.

The undersigned hereby consent to the form and entry of this Order:

WILLIAM J. BURNETT                           SHEILA CALELLO
Flaster/Greenberg, P.C.                         McCarter & English, LLP
Counsel to Chapter 7 Trustee                 Counsel to Magyar Bank


By:_____              By:___/S/ Sheila Calello_____

Dated:___1/16/20_____                         Dated:___1/17/20_____


JONATHAN I. RABINOWITZ                  GARY D. BRESSLER
Rabinowitz, Lubetkin & Tully, LLC          McElroy, Deutsch, Mulvaney & Carpenter, LLP
Counsel to Prestige Capital Corp.            Counsel to Selective Insurance Company of America


By:_____              By:_____

Dated:_____             Dated:___1/16/2020_____

Page 11
In re:  Kline Construction Co., Inc.
Case No. 19-25757 (JNP)
Consent Order Governing the Chapter 7 Trustee's Collection of Accounts Receivable and Liquidation of Assets

18.    This order shall be effective immediately upon its entry and there shall be no stay

thereof under Fed. R. Bankr. P. 4001(a)(3) or otherwise.

The undersigned hereby consent to the form and entry of this Order:

WILLIAM J. BURNETT                          SHEILA CALELLO
Flaster/Greenberg, P.C.                     McCarter & English, LLP
Counsel to Chapter 7 Trustee                Counsel to Magyar Bank

By: _____                 By: _____

Dated: 1/16/20                              Dated: _____

JONATHAN I. RABINOWITZ                      GARY D. BRESSLER
Rabinowitz, Lubetkin & Tully, LLC           McElroy, Deutsch, Mulvaney & Carpenter, LLP
Counsel to Prestige Capital Corp.           Counsel to Selective Insurance Company of America

By: _____                 By: _____

Dated: 1/17/20                              Dated: 1/16/2020

MEI 32387256v.1

Exhibit A

**Kline Construction Co., Inc DIP Factor AR Aging - 01-16-20**

| Debtor Name | Invoice# | Purchase Date | Inv Date | Inv Days | Total | 1 To 30 | 31 To 60 | 61 To 90 | 91 To 120 | Over 120 |
|---|---|---|---|---|---|---|---|---|---|---|
| COMCAST CABLE | 1519304 | 12/19/19 | 12/19/19 | 30 | 1,066.00 | 1,066.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| COMCAST CABLE | 1519328 | 12/19/19 | 12/19/19 | 30 | 2,060.28 | 2,060.28 | 0.00 | 0.00 | 0.00 | 0.00 |
| COMCAST CABLE Total | | | | | 490,501.34 | 97,519.64 | 275,491.68 | 88,904.86 | 4,881.82 | 24,103.34 |
| MATRIX NAC (PR) | 558513 | 12/19/19 | 12/19/19 | 30 | 2,087.26 | 2,087.26 | 0.00 | 0.00 | 0.00 | 0.00 |
| MATRIX NAC (PR) Total | | | | | 2,087.26 | 2,087.26 | 0.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518436 | 12/03/19 | 11/27/19 | 51 | 1,062.00 | 0.00 | 1,062.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518437 | 12/03/19 | 11/27/19 | 51 | 943.00 | 0.00 | 943.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518450 | 12/03/19 | 11/27/19 | 51 | 764.50 | 0.00 | 764.50 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518669 | 12/03/19 | 11/27/19 | 51 | 552.00 | 0.00 | 552.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518611 | 12/03/19 | 11/27/19 | 51 | 943.00 | 0.00 | 943.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518618 | 12/03/19 | 11/27/19 | 51 | 552.00 | 0.00 | 552.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518643 | 12/03/19 | 11/27/19 | 51 | 943.00 | 0.00 | 943.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518644 | 12/03/19 | 11/27/19 | 51 | 1,002.50 | 0.00 | 1,002.50 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518687 | 12/11/19 | 12/06/19 | 42 | 943.00 | 0.00 | 943.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1518811 | 12/11/19 | 12/06/19 | 42 | 207.00 | 0.00 | 207.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519057 | 12/18/19 | 12/13/19 | 35 | 412.00 | 0.00 | 412.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519061 | 12/18/19 | 12/13/19 | 35 | 616.00 | 0.00 | 616.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519125 | 12/18/19 | 12/13/19 | 35 | 207.00 | 0.00 | 207.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519129 | 12/18/19 | 12/13/19 | 35 | 943.00 | 0.00 | 943.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519133 | 12/18/19 | 12/13/19 | 35 | 764.50 | 0.00 | 764.50 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519194 | 12/18/19 | 12/18/19 | 30 | 721.00 | 721.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519203 | 12/19/19 | 12/18/19 | 30 | 637.00 | 637.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519214 | 12/19/19 | 12/18/19 | 30 | 1,071.00 | 1,071.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER | 1519298 | 12/19/19 | 12/18/19 | 30 | 552.00 | 552.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| RIGGS DISTLER Total | | | | | 13,837.50 | 2,981.00 | 10,856.50 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1518870 | 12/11/19 | 12/06/19 | 42 | 2,267.00 | 0.00 | 2,267.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519077 | 12/18/19 | 12/13/19 | 35 | 1,407.00 | 0.00 | 1,407.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519078 | 12/18/19 | 12/13/19 | 35 | 1,037.25 | 0.00 | 1,037.25 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519079 | 12/18/19 | 12/13/19 | 35 | 1,261.00 | 0.00 | 1,261.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519120 | 12/18/19 | 12/13/19 | 35 | 399.00 | 0.00 | 399.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519121 | 12/18/19 | 12/13/19 | 35 | 329.25 | 0.00 | 329.25 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519122 | 12/18/19 | 12/13/19 | 35 | 490.00 | 0.00 | 490.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519123 | 12/18/19 | 12/13/19 | 35 | 960.00 | 0.00 | 960.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519124 | 12/18/19 | 12/13/19 | 35 | 1,286.00 | 0.00 | 1,286.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519166 | 12/18/19 | 12/13/19 | 35 | 1,416.00 | 0.00 | 1,416.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519165 | 12/18/19 | 12/13/19 | 35 | 728.25 | 0.00 | 728.25 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519171 | 12/18/19 | 12/13/19 | 35 | 864.00 | 0.00 | 864.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519172 | 12/18/19 | 12/13/19 | 35 | 767.50 | 0.00 | 767.50 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519173 | 12/18/19 | 12/13/19 | 35 | 611.00 | 0.00 | 611.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519174 | 12/18/19 | 12/13/19 | 35 | 568.00 | 0.00 | 568.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519209 | 12/19/19 | 12/18/19 | 30 | 1,286.00 | 1,286.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519210 | 12/19/19 | 12/18/19 | 30 | 1,156.00 | 1,156.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519211 | 12/19/19 | 12/18/19 | 30 | 767.50 | 767.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519305 | 12/19/19 | 12/18/19 | 30 | 846.00 | 846.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519306 | 12/19/19 | 12/18/19 | 30 | 1,056.00 | 1,056.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519307 | 12/19/19 | 12/18/19 | 30 | 864.00 | 864.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. | 1519309 | 12/19/19 | 12/18/19 | 30 | 689.00 | 689.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ULS - UTILITY LINE SERVICES, INC. Total | | | | | 21,255.75 | 6,664.50 | 14,591.25 | 0.00 | 0.00 | 0.00 |
| Grand Total | | | | | 543,777.81 | 109,252.40 | 316,635.39 | 88,904.86 | 4,881.82 | 24,103.34 |

*With regard to an account receivable in the amount of $5,406.60 owed by Atlantic City Electric Company ("ACE") to the Debtor (the "Bonded Receivable"), to the extent outstanding, Selective has represented to Prestige, upon which representation Prestige has relied in reaching this agreement, that the Bonded Receivable is the limit of the amount it claims to an account receivable on a job of the Debtor with ACE for which Selective has issued a bond, to the extent outstanding. Based upon such representation, Prestige and Magyar agree that, if (i) the Bankruptcy Court determines by final non-appealable order which has not been stayed or (ii) by agreement of Prestige, Magyar and Selective, the Bonded Receivable is a part of any accounts receivable owed by ACE to the Debtor that is collected by or turned over to Prestige or Magyar, Prestige or Magyar, as the case may be, shall disgorge the amount of the Bonded Receivable to Selective.

Exhibit B

## Exhibit B - Not-Purchased Debtor AR*

| | | |
|---|---|---|
| JCPL | $ | 71,368.56 |
| Valiant | $ | 10,613.93 |
| Boring Brothers | $ | 2,877.76 |
| Family Empowerment Associates | $ | 1,838.16 |
| **TOTAL** | $ | 86,698.41 |

PLUS ALL ITEMS LISTED ON EXHIBIT C

* It should be noted that this summary exhibit is approxiate based off of the information currently known to the Trustee and is based off the the Debtor's books and records as of January 15, 2020. This remains subject to further reconcilation and change.

Exhibit C

## Exhibit C - AR Due From Prestigue Account Debtors*

| | | |
|---|---|---|
| Comcast | $ | 514,208.68 |
| Riggs Distler & Co, INC | $ | 16,336.50 |
| Utility Line Services | $ | 46,896.50 |
| Atlantic City Electric | $ | 779,860.13 |
| **TOTAL** | **$** | **1,357,301.81** |

\* It should be noted that this summary exhibit is approxiate based off of the information currently known to the Trustee and is based off the the Debtor's books and records as of January 15, 2020. This remains subject to further reconciliation and change.

*With regard to an account receivable in the amount of $5,406.60 owed by Atlantic City Electric Company ("ACE") to the Debtor (the "Bonded Receivable"), to the extent outstanding, Selective has represented to Prestige, upon which representation Prestige has relied in reaching this agreement, that the Bonded Receivable is the limit of the amount it claims to an account receivable on a job of the Debtor with ACE for which Selective has issued a bond, to the extent outstanding. Based upon such representation, Prestige and Magyar agree that, if (i) the Bankruptcy Court determines by final non-appealable order which has not been stayed or (ii) by agreement of Prestige, Magyar and Selective, the Bonded Receivable is a part of any accounts receivable owed by ACE to the Debtor that is collected by or turned over to Prestige or Magyar, Prestige or Magyar, as the case may be, shall disgorge the amount of the Bonded Receivable to Selective.

Exhibit D

**TABLE A**

| Date of Issuance | Bond Number | Obligee & Bonded Obligation | Penal Sum |
|---|---|---|---|
| 6/21/17 | B1189092 | Borough of Collingswood – Well House No. 8 & Transmission Main | $560,049.00 |
| 7/6/17 | B1189099 | City of Somers Point Board of Education – Emergency Sanitary Repairs and Miscellaneous Maintenance – Contract #4, Various | $223,680.00 |
| 9/27/17 | B1192565 | City of Woodbury – FY2017 Water and Sanitary Sewer Project – Water Main Replacement – Chester and... | 282,257.00 |
| 11/21/17 | B1194139 | Borough of Buena – Replacement of Plymouth Street Culverts | 333,000.00 |
| 1/19/18 | B1195958 | Hamilton Township MUA - Route 40 - Gravity Main Abandonment & Grouting - Contract No. 3 - Between Babcock & 32nd Street | 84,637.50 |
| 4/24/18 | B1185958 | Operating Engineers Local 825 – Union Bond | 25,000.00 |
| 2-15-18 | B1197116 | City of Northfield – General Repairs & Construction of Sanitary Sewer & Storm Water Facilities | 577,386.00 |
| 3/2/18 | B1197830 | Egg Harbor Township MUA - Contract No. 88 - Trailer Park Pump Station Upgrades | 299,232.00 |
| 3-30-18 | B1199295 | City of Somers Point – 2017 Stormwater Repairs, Miscellaneous Repairs throughout the City – Contract No. 47 | 230,000.00 |
| 5/17/18 | B1201487 | Township of Galloway - Glenn Property Sanitary Sewer Extension - Veterans Memorial Park - Contract No. 37 | 45,800.00 |
| 7/10/18 | B1188297 | IBEW Local Union 351 Wage & Fringe Benefits | 85,000.00 |
| 7-2-18 | B1203437 | Egg Harbor Township MUA – Greater Zion Clean Out and Lateral Repair – Contract No. 105 | 223,300.00 |
| 7-24-18 | B1204272 | Township of Barnegat  - FY-2014 Bike Path Extension, West Bay Avenue | 191,224.50 |

| | | | |
|---|---|---|---|
| 8/31/18 | B1191032 | Burlington County - Permit Bond - Overhead Construction Permit No. RO17-282P - Church Road and Springdale Road, Mount Laurel Township | 1,000.00 |
| 8/16/18 | B1205238 | City of Somers Point – Pump Station No. 2 Force Main Replacement | 188,000.00 |
| 8-29-18 | B1205675 | Atlantic City Electric Company – New Electric Service – 496869 – 312 Stiles Avenue, Cape May Point, NJ – WR# 5685608 – Project for Cape May Point | 5,406.60 |
| 10-17-18 | B1207550 | City of Camden – Replacing 2" Pipe for Comcast – FRE-NJ-10352172 – Camcare, 817 Federal Street, Camden, NJ 08101 | 150,000.00 |
| 11-1-18 | B1208106 | Borough of Cape May Point – Street Opening Bond – Blanket – Bond Term: 11-1-18 – 12-31-19 | 10,000.00 |
| 1-22-19 | B1210952 | County of Cumberland – 2018 Drainage Improvements – Bid # 18-6- | 563,498.25 |
| 2-12-19 | B1211871 | County of Ocean – Construction of Union Trail – Plumsted Township | 407,235.00 |
| 4-24-19 | B1185958 | Surety Bond Renewal - Operating Engineers Local 825 | 25,000.00 |

** Note:  The penal sums of all bonds that Selective issued in connection with Debtor's construction contracts are double the amount scheduled within the above table, as both a performance and payment bond issued in connection with each such construction contract.  By way of example, Performance Bond No. B1211871 and Payment bond No. B1211871 each issued on February 12, 2019, in connection with Debtor's obligations to perform its construction contract with the County of Ocean for "Construction of Union Trail – Plumstead Township".  The penal sum of Performance Bond No. B1211871 is $407,235.00, and the penal sum of Payment Bond No. B1211871 is $407,235.00, for a total exposure of $814,470.

** The three bonds highlighted in yellow are union bonds and thus not subject to doubling the penal sums as required by the performance and payment bonds.